Waushara County, Respondent, vs. Calumet County and another, Appellants.

*May 21—June 12, 1941.*

*Donald E. Bonk,* district attorney of Calumet county, and *Helmuth F. Arps* of Chilton, attorney for the town of Rantoul, for the appellants.

For the respondent there was a brief by *Samuel Bluthe,* district attorney of Waushara county, and *Lehner & Lehner* of Princeton of counsel, and oral argument by *Philip Lehner.*

FOWLER, J. Proceedings were instituted by Waushara county pursuant to sec. 49.03 (8a), Stats. 1939, to recover from Calumet county an amount expended by the plaintiff county for public relief furnished to Frederick Heffner as a nonresident poor person for the support of himself and family. It is not in dispute that the amount claimed was expended or that Heffner was a poor person entitled to relief when the relief was furnished. The sole question for determination is,

In which county did Heffner have a legal settlement when the relief was furnished?

On April 26, 1937, Heffner had a legal settlement in Waushara county. He was then living at Red Granite with his wife and family of three small children, with his wife's parents, and there had his household goods. At that time he was being furnished public relief as a poor person by the public authorities and continued to be furnished such relief by them until May 27, 1937. On April 26, 1937, Heffner began working on a farm for a Mr. Duchow in the town of Rantoul, in Calumet county. He was paid $30 per month in summer and $35 in winter and furnished room and board, without any definite term of service being fixed. He then thought his work there would be temporary. He took only his work clothes with him and left his wife and family and household goods and part of his clothing with the wife's parents. He had an automobile and went from Duchow's to visit his family seventy miles away every two weeks or so. This continued until June 6, 1937, when he moved his family and household goods into a near-by house on another farm owned by Duchow for which he paid Duchow $5 a month rent. He continued to get his meals with Duchow but spent his nights with his family. Duchow sold this farm and had to give possession March 15, 1938. No other house near was available to Heffner, and his wife had epileptic fits and could not be left entirely alone. He moved his family and household goods back to his wife's parents on March 12, 1938, where she could receive care as needed from her mother. Heffner testified that while with Duchow he considered his "home" in Waushara county. He left Duchow's employ and rejoined his family at his father-in-law's on August 29, 1938. He received no public relief from May 27, 1937, to August 29, 1938, a period of one year and about four months.

On these facts the welfare department concluded that Heffner became a resident of Calumet county the day he went to

work for Duchow; that from then on until he left Duchow's he remained a resident of said county; that as he remained such resident for more than a year without receiving poor relief, he had acquired a legal settlement in Calumet county when he rejoined his family at Red Granite, and Waushara county was entitled to recover from Calumet county for relief furnished a nonresident poor person the sums thereafter furnished him, and an order was entered directing such reimbursement and reimbursement by the town of Rantoul to Calumet county.

Sec. 49.03 (8a), Stats. 1939, conferred on the industrial commission the adjustment of claims by a county furnishing aid to nonresidents thereof against the county of their residence under sec. 49.04, Stats. Ch. A 58, Stats. 1939 (ch. 435, Laws 1939), subsequently enacted, transferred this jurisdiction to the newly created state department of public welfare. Pursuant to this transfer the instant proceeding was duly brought before that department. The statutes governing the duty and liability for the support of Heffner are in substance as follows:

Sec. 49.01, Stats., imposes on every town the duty to "relieve and support all poor and indigent persons lawfully settled therein."

Sec. 49.02 (4), Stats., provides that "every person of full age who shall have resided in any town . .. in this state one whole year shall thereby gain a settlement therein; but no residence of a person in any town . . . while supported therein as a pauper . . . shall operate to give such person a settlement therein."

Sec. 49.02 (7), Stats., provides that "every settlement when once legally acquired shall continue until it be lost or defeated by acquiring a new one . . . or by voluntary and uninterrupted absence from the town . . . in which such legal settlement shall have been gained for one whole year or upward; and upon acquiring a new settlement or upon the

happening of such voluntary and uninterrupted absence all former settlements shall be defeated and lost." It is to be noted that the absence of Heffner from Red Granite was not "uninterrupted."

Sec. 49.04, Stats., provides "the county board of each county shall have the care of all poor persons in said county who have no legal settlement in the town . . . where they may be, except as provided in sec. 49.03, and shall see that they are properly relieved and taken care of at the expense of the county."

Sec. 49.03 (1), Stats., provides that "when any person not having a legal settlement therein . . . shall be in need of relief as a poor person . . . the town board . . . shall provide such assistance to such person as it may deem just . . . and order the same to be paid" out of the treasury of such municipality.

Sub. (2) of sec. 49.03, Stats., provides that the expense incurred pursuant to sub. (1) above shall be a charge against the county and paid out of the county treasury, and if the person to whom the relief is furnished shall not have a legal settlement within the county it may be recovered from the county of his legal settlement and such county may recover from the town of the person's legal settlement.

The question under these statutes is, Did Heffner by going to the town of Rantoul and remaining there for over a year under the circumstances stated lose his legal settlement in Red Granite and acquire a new one in the town of Rantoul?

The fact that he himself remained voluntarily away for more than one year from Red Granite without receiving relief did not defeat his legal settlement at Red Granite if his residence at Rantoul was for less than one year. His family was at Rantoul for less than a year, and if his residence was that of his family under subs. (4) and (7) of sec. 49.02, Stats., his stay at Rantoul did not gain him a legal settlement or defeat his legal settlement at Red Granite.

On this precise point only two cases are called to our attention that seem to us to have bearing upon it. One is *Topsham v. Lewiston,* 74 Me. 236, 238. In the opinion in this case it is stated:

"When a residence has once been established by the concurrence of intention and personal presence, continuous personal presence thereafter is not essential to a continuous residence, especially when he whose residence is in question has a family between whom and him the mutual family relations are in full force; for absences of longer or shorter periods for temporary purposes, do not change the established home at which the family continue to reside with the consent of its head. *Knox v. Waldoborough,* 3 Maine, 455. The practical general rule that a man's home is where his family is has so few exceptions, that the place of the family's residence is *prima facie* evidence of the husband's. *Greene v. Windham,* 13 Maine, 225. And when the home is fixed it continues until it is changed or abandoned, although the acquiring of another is not essential. *Exeter v. Brighton,* 15 Maine, 58. But to change the established place of residence of a man having a family in full relations, a departure or absence therefrom with an intention not to return must concur (*Hempden v. Levant,* 59 Maine, 557) ; or departure or absence therefrom without any present intention of ever returning must coexist. *Bangor v. Brewer,* 47 Maine, 97 ; *Corinth v. Bradley,* 51 Maine, 540."

This, we consider, states the general rule correctly.

The other case above referred to, a poor-relief case, *State ex rel. Wood County v. Dodge County,* 56 Wis. 79, 86, 13 N. W. 680, is in accord with the rule of the *Maine Case* above stated. It is there held that a person's "proper residence"—

"means something more than stopping in the county for a mere temporary purpose, as on business, or for pleasure. It imports something more than this. We would not say that a person's 'proper residence' was where he was making a visit, or where he was temporarily staying to transact some business, or for some transient purpose, without any intention of remaining in that place after he had accomplished his object in going there. Such a temporary stay in a place would

not make one a 'resident' within either the letter or spirit of the statute. But where a person takes up his abode in a county with the present intention of remaining there, where he expects to reside, where he would exercise his political right to vote, if an elector, where his personal property would be taxable in that county he might justly be said to have a 'proper residence.' These words are used in the statutes in very much the same sense as the words 'acquired domicile' in some authorities; that is, the place where the person has voluntarily fixed his abode, not for a mere special or temporary purpose, but with the present intention of making it his home."

It is noted that in the excerpt next above quoted the court refers to the "right to vote" as bearing on the question of residence in poor-relief cases. This reference relates to *Dutcher v. Dutcher,* 39 Wis. 651, where the residence of one year requisite to give jurisdiction in divorce cases is referred to as such a residence as "continued a year would make a man a qualified elector of the state." As well as under the divorce statute may the meaning of the word "residence" in the statutes governing the right to vote affect the right to relief as a poor person. These statutes provide:

"Sec. 6.51 (2)    That place shall be considered and held to be the residence of a person in which his habitation is fixed, without any present intention of removing therefrom, and to which, whenever he is absent, he has the intention of returning."

When Heffner left Red Granite to work in Rantoul his habitation was in Red Granite; he then had no present intention of removing therefrom; and he then had the present intention of returning thereto.

"Sec. 6.51 (3)    A person shall not be considered or held to have lost his residence who shall leave his home and go into another state or county, town or ward of this state for temporary purposes merely, with an intention of returning."

When Heffner left Red Granite to go to Rantoul he left for a temporary purpose, and then intended to return.

"Sec. 6.51 (7)   The place where a married man's family resides shall generally be considered and held to be his residence; but if it is a place of temporary establishment for his family, or for transient objects, it shall be otherwise."

Heffner's family resided in Red Granite until they moved to Rantoul, and after they returned. Rantoul was established as the family's residence temporarily and for a transient object.

"Sec. 6.51 (8)   If a married man has his family fixed in one place and does his business in another, the former shall be considered and held to be his residence."

Heffner had his family fixed in Red Granite and did "business" in Rantoul, both until he took the family to Rantoul and after he returned them to Red Granite.

We consider that under the undisputed facts Heffner was a resident of Red Granite while the family was residing there, and that as the family did not reside in Rantoul a year he did not lose his legal settlement in Red Granite or acquire a new one in Rantoul.

It is urged that the findings of fact of the welfare board must be sustained if there is evidence to support them under the rule applicable to findings of the industrial commission. This is quite true.   But we perceive no finding of fact in the findings of the board inconsistent with the conclusion of law that on the undisputed evidence Heffner's legal settlement was Red Granite when the relief involved was furnished.   True there are statements in the so-called findings of fact made by the board that would support the final "conclusion" of the board.   These statements are : That he started residing in Rantoul April 26, 1937; that he continued to reside in Rantoul until August 29, 1938; that he resided in Rantoul from

May 25, 1937, to August 29, 1938, and thereby acquired a legal settlement in Rantoul. But all these statements as to residence, taking them as relating to residence affecting legal settlement, are conclusions of law from undisputed evidence and must give way to the conclusions of law reached by the court.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded to the circuit court with directions to enter judgment in accordance with this opinion.

FRITZ, J., dissents.