Gerald EASTMAN and Thomas P. Hanson,
Plaintiffs-Appellants,

v.

CITY OF MADISON, Paul R. Soglin, Elizabeth Smith, David
C. Couper, and Eldon E. Maginnis, Defendants-
Respondents.†

Court of Appeals

*No. 82–2392. Submitted on briefs October 13, 1983.—
Decided December 27, 1983.*
(Also reported in 342 N.W.2d 764.)

† Petition to review dismissed.

For the plaintiffs-appellants the cause was submitted on the briefs of *Richard V. Graylow* and *Lawton & Cates* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Henry A. Gempeler,* city attorney, and *Larry W. O'Brien,* assistant city attorney.

Before Gartzke, P.J., Dykman, J. and Gordon Myse, Reserve Judge.

GORDON MYSE, Reserve Judge. This is an appeal from an order denying appellants' request for declaratory relief ordering their reinstatement as City of Madison employees. Appellants' positions of employment were vacated for failure to comply with Madison General Ordinance 3.27[1] which requires them to reside in Madison. The trial court found that vacation of appellants' positions was proper. We agree and affirm.

Appellants contend that they complied with the ordinance, that the assurances of supervisors estopped vacation of their positions, and that the vacations are void

---

[1] Madison General Ordinance 3.27 provides:
QUALIFICATIONS—CITY OFFICERS, MEMBERS OF COMMISSIONS, AND EMPLOYEES. No person shall be eligible for . . . employment to any position as an . . . employee . . . unless he shall reside in the City of Madison unless permission to reside outside the City of Madison shall be expressly granted by the Mayor. In the event that any such City . . . employee . . . shall cease to reside in the City of Madison, his office, position or employment shall be automatically forthwith vacated . . . .

because they were not done pursuant to sec. 62.13, Stats. They also contend that the ordinance and its application violate due process and equal protection of the law.

Appellants were permanent city employees, Eastman with the police department and Hanson with the fire department. Madison General Ordinance 3.27 was applicable throughout appellants' employment. Eastman complied with the ordinance until 1976. Hanson complied until 1973. Appellants and their families then moved outside the city. Their children went to school outside Madison, and appellants spent most of their off-duty time in their homes outside Madison. They kept apartments in Madison and Madison mailing addresses, telephone numbers, automobile and voter registrations.

In early November 1976, the mayor of Madison sent a memorandum to all city employees advising that the city intended to enforce Madison General Ordinance 3.27 to its fullest extent. That memorandum set forth several criteria for evaluation of residency.[2] Eastman's residency was reviewed in March, May, and September 1977. According to a stipulation by the parties, in a predetermination hearing held on September 29, 1977, Eastman, accompanied by a union representative, "had unfettered discretion in bringing and presenting all evidence . . . to show compliance." The police chief vacated Eastman's

---

[2] The criteria were listed as follows:

Is the employee's primary domicile located within the City?

If an employee is married, does the spouse live in the City?

If an employee has children, do they live in the City?

Do they attend school in the City?

Is the employee registered to vote in the City?

For income tax purposes, is Madison given as a place of residence?

Does the employee maintain a telephone in the City?

Does the employee sleep and eat in the City?

Are the employee's personal belongings located in the City?

Does the employee and family spend most of their time within the City?

position after the hearing. Eastman did not grieve that action under his collective bargaining agreement.

Hanson's residency was reviewed in November 1976, and at a predetermination hearing in October 1977 by departmental personnel. He was permitted to present all evidence available to show compliance with the ordinance. Hanson was accompanied by counsel and a union representative. Hanson's position was vacated after the hearing. He grieved the decision, and received a hearing before an arbitrator. The arbitrator dismissed the grievance.

The trial court denied appellants' request for reinstatement and injunctive relief. The court concluded that appellants were not Madison residents as defined by the ordinance, and that the city was not estopped by alleged assurances made to appellants by superior officers. The trial court concluded the ordinance was constitutional facially and in its application to appellants.

Upon review, "all legislative acts are presumed constitutional, a heavy burden is placed on the party challenging constitutionality and if any reasonable doubt exists it must be resolved in favor of the constitutionality of the [ordinance]." *In Matter of Guardianship of Nelson,* 98 Wis. 2d 261, 266, 296 N.W.2d 736, 738 (1980). Residency requirements are not constitutionally objectionable *per se. McCarthy v. Philadelphia Civil Serv. Comm'n.,* 424 U.S. 645 (1976) *(per curiam); Ciechon v. City of Chicago,* 634 F.2d 1055, 1059 (7th Cir. 1980). With this in mind we proceed to address appellants' contentions with regard to Madison General Ordinance 3.27 and its application to appellants.

The issues on appeal involve questions of law. We address these questions without "giving special deference to

the determinations of the trial court." *First Nat. Leasing Corp. v. Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). The "construction of an ordinance, like construction of a statute, is a question of law." *Village of Sister Bay v. Hockers,* 106 Wis. 2d 474, 483, 317 N.W.2d 505, 509 (Ct. App. 1982). Regarding residency, the application of a legal standard to a particular set of facts is a question of law. *Department of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *affd,* 447 U.S. 207 (1980).

## Due Process Hearing

Appellants contend the vacation of their positions denied due process.[3] The parties agree that appellants had property interests in their continued employment which entitled them to due process protections. *See generally Board of Regents v. Roth,* 408 U.S. 564 (1972). Due process requires notice of charges and an opportunity for a hearing. *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976). The hearing must be held in a meaningful manner and at a meaningful time. *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). A pre-termination hearing is not required if a prompt post-suspension hearing is provided. *Barry v. Barchi,* 443 U.S. 55, 63–64 (1979). "[S]omething less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mathews,* 424 U.S. at 343.

---

[3] *See* U.S. Const. amend. XIV, sec. 1. Appellants contend the ordinance is invalid because it authorizes vacation without providing for due process. A lack of explicit reference to hearing rights is not constitutionally fatal. The residency requirement challenged in *Ciechone v. City of Chicago,* 634 F.2d 1055 (7th Cir. 1980), was not explicit. The determinative inquiry, in *Chiechone* and in this case, is whether employees received due process by the city's procedures in enforcing the ordinance.

■■■■■

■

Appellants were given due process. The departments reviewed the residency of appellants. Individual predetermination hearings were then held, with appellants present, where they were given the opportunity to present evidence. Appellants were later notified in writing that their positions were vacated for failure to comply with the ordinance. This procedure accorded greater protection "prior to adverse administrative action" than that found constitutional in *Ciechone v. City of Chicago,* 634 F.2d 1055 (7th Cir. 1980). In *Ciechone* employees were merely notified, in person, that their residency was under investigation. They were later suspended in writing. *Id.* at 1056–57. The court concluded that due process then required a prompt post-suspension hearing. *Id.* at 1060.

Appellants' collective bargaining agreements provided for post-suspension hearings.[4] Hanson grieved the vacation of his position; Eastman did not. The availability of such grievance procedure culminating in a full evidentiary hearing has been held to satisfy due process requirements:

The grievance-arbitration provisions of [the] collective bargaining agreement furnished [appellants] with an adequate opportunity to obtain a fair hearing in which to contest the allegedly arbitrary deprivation of [their] job, and therefore [they were] not deprived of a liberty-property interest in violation of due process.

*Tufts v. United States Postal Service,* 431 F. Supp. 484, 488 (N.D. Ohio 1976). *See also Detweiler v. Com. of Va. Dept. of Rehab. Services,* 705 F.2d 557, 560–61 (4th Cir. 1983); *Stephens v. Postmaster General,* 623 F.2d 594,

---

[4] Appellants perfunctorily suggest the post-vacation hearing was not promptly held. December and April hearings were held after vacation in the previous October. This satisfies due process. *See Arnett v. Kennedy,* 416 U.S. 134, 157–58 (1974) (Rehnquist, J.); *id.* at 169–70 (Powell, J., concurring).

595–96 (9th Cir. 1980) *(per curiam); Winston v. United States Postal Service,* 585 F.2d 198, 209–10 (7th Cir. 1978).

### Impartial Decisionmaker

Appellants contend "the ordinance unconstitutionally merges the accusatorial, prosecutorial, and adjudicatory functions into one person—the departmental chief." This contention addresses the due process right to an impartial decisionmaker. *See State ex rel. DeLuca v. Common Council,* 72 Wis. 2d 672, 680, 242 N.W.2d 689, 692 (1976). Appellants were not denied due process through a deprivation of an impartial decisionmaker.

Appellants must overcome a presumption of honesty and integrity in those serving as adjudicators. *DeLuca,* 72 Wis. 2d at 684, 242 N.W.2d at 696. A merger of functions is not unconstitutional:

[T]here is no *per se* disqualification because of the combining of the investigatory and the adjudicatory functions, [but] special facts and circumstances may in a proper case impel a court to conclude that the risk of unfairness is intolerably high.

*Id.* at 685, 242 N.W.2d at 696.

In *DeLuca* four aldermen voted to initiate proceedings to remove the city clerk, and they later participated in the decision to terminate his employment after a hearing held before them. The court found no indication of a high probability of unfairness in those circumstances. No pecuniary interest or personal animosity was shown. *Id.,* at 684, 242 N.W.2d at 695. Appellants likewise show no circumstances which suggest a high probability of unfairness. Appellants merely assert that the merger of func-

tions deprived them of due process. No denial of due process is shown.

Applicability of Section 62.13, Stats.

Appellants also contend that the procedures of sec. 62.-13(5), Stats., for termination of police and fire personnel should have been followed. The ordinance is not a disciplinary provision, and sec. 62.13(5) is therefore inapplicable. Section 62.13(5) on its face only applies to proceedings of a disciplinary nature. An unambiguous statute is given its ordinary and accepted meaning. *Milwaukee v. Lindner*, 98 Wis. 2d 624, 632, 297 N.W.2d 828, 832 (1980). Appellants were not disciplined. Appellants were ineligible for employment because they did not reside in the city. Section 62.13(5) is inapplicable to terminations which are not disciplinary. *See Kaiser v. Board of Police and Fire Commrs.*, 104 Wis. 2d 498, 502–03, 311 N.W.2d 646, 649 (1981).

Vagueness

Appellants also challenge the ordinance as unconstitutionally vague and as a denial of equal protection. An ordinance must give a person of ordinary intelligence a reasonable opportunity to know what is required. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The party challenging an ordinance has the burden of showing that it is impermissibly vague in all its applications. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 497 (1982).

The ordinance provides that a city employee must "reside" within Madison. "Reside" is not ambiguous.

*Black's Law Dictionary* defines residence as "[p]ersonal presence at some place of abode with no present intention of definite and early removal . . . Residence implies something more than mere physical presence . . . ." *Black's Law Dictionary* 1176 (rev. 5th Ed. 1979).[5] "Residence" has often been discussed in published appellate opinions. *See Estate of Daniels,* 53 Wis. 2d 611, 613, 193 N.W.2d 847, 848 (1972) (and cases cited therein). The mayor's memorandum to appellants set forth ten specific criteria for determining residency. Any confusion regarding the meaning of residence does not rise to the level of an unconstitutional vagueness.

## Equal Protection

Appellants contend that the positions of similarly situated individuals were not vacated. This contention, without more, fails to establish a violation of equal protection:

The equal protection clause of the fourteenth amendment is violated if an ordinance is administered "with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74 (1886); *State ex rel. O'Neil v. Town of Hallie,* 19 Wis. 2d 558, 567, 120 N.W.2d 641, 646 (1963). Nevertheless, evidence that a municipality has enforced an ordinance in one instance and not in others would not in itself establish a violation of the equal protection clause. *State ex rel. Cities Service Oil Co. v. Board of Appeals,* 21 Wis. 2d 516, 544, 124

---

[5] Appellants' stated intent to establish residency is not conclusive. Declarations of intent are simply evidence of "attitude of mind." *Restatement (Second) of Conflict of Laws* sec. 20 special note (1971) (formal declarations); *see McCarthy v. Phila. Civ. Svc. Com.,* 339 A.2d 634, 637 (Pa. Commw. 1975), *aff'd.,* 424 U.S. 645 (1976) (per curiam). Declaration of intent is not listed in the mayor's memorandum of residency criteria.

N.W.2d 809, 823 (1963). There must be a showing of an intentional, systematic and arbitrary discrimination. *State ex rel. Murphy v. Voss*, 34 Wis. 2d 501, 510, 149 N.W.2d 595, 599 (1967).

*Village of Menominee Falls v. Michelson*, 104 Wis. 2d 137, 145, 311 N.W.2d 658, 662 (Ct. App. 1981). Appellants' equal protection challenge is therefore rejected in the absence of proof of intentional discrimination.

## Estoppel

Representations made by appellants' superior officers do not estop enforcement of the ordinance. The party asserting equitable estoppel must have reasonably relied upon the representation. *Grams v. Melrose-Mindoro Jt. S.D. No. 1*, 78 Wis. 2d 569, 580, 254 N.W.2d 730, 736 (1977). Appellants' superior officers had no authority to waive the requirements of the ordinance, and appellants could not rely on their supervisors' misstatement of law. *Id.* The mayor notified appellants in writing of the city's intention to strictly enforce the residency requirement. Notification included a statement of several criteria for gauging compliance. Appellants' reliance on the representation of superior officers was unreasonable.

A change in enforcement of the ordinance does not estop the city from vacating appellants' positions. A similar contention was rejected by the Massachusetts Supreme Court:

The plaintiff's claim, nevertheless, is that the lack of enforcement of the statute induced Boston police officers to purchase homes in cities and towns surrounding Boston on the presumption that § 99A was a "dead letter." It would indeed be a most serious consequence if we were to conclude that the inattention or inactivity of government officials could render a statute unenforceable and thus

deprive the public of the benefits or protections bestowed by the Legislature. The plaintiff cites no decision of this court that would support his position in this regard. *The public interest in the enforcement of the laws of the Commonwealth cannot be defeated by failure of public officials to perform their duties.* [Footnote omitted; emphasis supplied.]

*Doris v. Police Commissioner of Boston,* 373 N.E.2d 944, 949 (Mass. 1978). *See also Trainor v. City of Newark,* 368 A.3d 381, 388 (N.J. Super. 1976) (lack of uniform enforcement of residency requirement does not invoke estoppel), *cert. denied,* 377 A.3d 661 (N.J. 1977). *Cf. Westgate Hotel, Inc. v. Krumbiegel,* 39 Wis. 2d 108, 114, 158 N.W.2d 362, 365 (1968) (long delayed enforcement of an ordinance does not estop enforcement at later date). We reject appellants' contention of estoppel.

### Residency

The trial court concluded that appellants were not residents within the meaning of Madison General Ordinance 3.27. We agree. Continuous personal presence and intention establish residency. *Waushara County v. Calumet County,* 238 Wis. 230, 235, 298 N.W. 613, 615 (1941); *Kampster v. The City of Milwaukee,* 97 Wis. 343, 347, 72 N.W. 743, 744 (1897). Appellants' declarations of intent are not conclusive. Such declarations are only evidence of state of mind, and "may be suspect because of their self-serving nature." *Restatement (Second) of Conflict of Laws* sec. 20 special note (1969) (formal declarations). "[T]he self-serving declaration cannot be conclusive but must yield to the intent which the acts and conduct of the person clearly indicate." *McCarthy v. Phila. Civ. Svc. Com.,* 339 A.2d 634, 637 (Pa. Commw. 1975) (declaration of intent to reside by

city employee outweighed by acts and conduct), *aff'd,* 424 U.S. 645 (1976) (per curiam).

The location of immediate family, and the site of children's schooling is significant in determining residence. *See Waushara County,* 238 Wis. at 235, 298 N.W. at 615; *Mercadante v. City of Paterson,* 266 A.2d 611, 613 (N.J. Super. 1970), *aff'd,* 275 A.2d 440 (N.J. 1971) (per curiam). Appellants' wives and families lived exclusively outside Madison in other municipalities. Their children attended school in those municipalities. Appellants spent most of their off-duty time in their homes outside Madison. The maintenance of apartments and voter registrations in Madison, in light of the totality of the circumstances, establishes neither the intent nor presence necessary for residency under Madison General Ordinance 3.27.

*By the Court.*—Order affirmed.