SIOUX VALLEY HOSPITAL ASSOCIA-
TION, A Charitable Association,
Plaintiff and Appellee.

v.

KINGSBURY COUNTY, South Dakota,
Defendant and Appellant.

No. 15639.

Supreme Court of South Dakota.

Considered on Briefs Aug. 31, 1987.

Decided Nov. 4, 1987.

---

Thomas M. Frankman of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellee.

Rodney J. Steele of Wilkinson & Steele, DeSmet, for defendant and appellant.

MILLER, Justice.

This appeal centers around a determination of residency and indigency under the county poor relief statutes, SDCL ch. 28-13. We reverse the trial court's residency determination and therefore need not address the indigency issue.

## PROCEDURAL BACKGROUND

Baby girl Eissfeldt was born to John and Karen Eissfeldt (Eissfeldts) on June 16, 1983, in Lake Preston, Kingsbury County, South Dakota. Shortly after her birth, because of certain medical problems, she was transferred for emergency care to Sioux Valley Hospital (Hospital) in Sioux Falls, South Dakota. She was hospitalized there for over three months for which Hospital charged and claimed actual costs amounting to $53,368.31. The trial court determined that Kingsbury County (County) was the residence of Eissfeldts, and having determined Eissfeldts to be indigent, awarded Hospital a judgment against County in the amount of the charges plus prejudgment interest and costs.

## ISSUE

Whether the trial court was clearly erroneous in finding that Eissfeldts were residents of Kingsbury County, South Dakota, on June 16, 1983? We find that it was.

## FACTS

Eissfeldts came to the Lake Preston area of County in 1983 for the purpose of assisting Charles Scott (Scott) in the planting and harvesting of crops. Scott, the father of Karen, operated approximately 1,000 acres of farmland in County and also operated farm land in Saskatchewan, Canada, and in Oklahoma. Eissfeldts assisted with farm work at each location, where a farmhouse was provided for them by Scott. Basically, from April to December 1983, Eissfeldts lived in County. For two or three weeks in June, they traveled to Canada to do farm work there and then they returned to South Dakota. In August, they went to Oklahoma to visit a grandmother and from there they went to Canada to do more farm work. By the end of August, they were back in County where they stayed until December, at which time they returned to Pelham, Massachusetts. Eissfeldts owned a house in Pelham, which had been placed

for sale sometime in 1983. When they came to South Dakota in 1983, they moved part of their property out of the Massachusetts home while other property remained there.

Both sides agree that baby girl Eissfeldt was born in South Dakota only because she was born premature. Otherwise, she would have been born in Canada.

## DECISION

South Dakota poor relief statutes place the burden on a county to relieve and support poor persons who are residents of the county. SDCL 28-13-1. We have consistently reinforced the statutory definition of residency for poor relief. SDCL 28-13-3; *Spurlin v. Siebrasse*, 74 S.D. 150, 49 N.W. 2d 604 (1951); *Appeal of Lawrence County*, 71 S.D. 49, 21 N.W.2d 57 (1945). *See also Nelson v. Nelson*, 71 S.D. 342, 24 N.W.2d 327 (1946).

SDCL 28-13-3 defines "residency" as follows:

... The residency shall be established by his personal presence, in a fixed and permanent abode and his intention to remain there. In determining the residency of an applicant the county commissioners *may* consider the establishment of a local bank account by the applicant, the applicant's driver's license address, and automobile registration, the enrollment of the applicant's children in a local school and the applicant's voter registration; however, the absence of any of the above considerations shall not be a positive determination of nonresidency. (Emphasis supplied.)

There are many factors present in the facts here establishing that the trial court erred in determining that Eissfeldts were residents of County *on June 16, 1983*. They had kept their Massachusetts driver's licenses. John Eissfeldt had kept his voter registration in Massachusetts. They listed their address with the Kingsbury County Director of Equalization and County Treasurer as Pelham, Massachusetts. They owned and maintained a home in Pelham, Massachusetts, where the bulk of their personal property was kept. They traveled to South Dakota exclusively to do farm work for Karen's father. Karen listed her residence on the child's birth certificate as being Riceton, Canada. The only bank account established in South Dakota was a small savings account opened by Karen. On their federal income tax return they listed Pelham, Massachusetts, as their address. They never obtained a post office box in County and, in fact, continued to receive mail in Massachusetts.

It seems evident that the trial court relied heavily on Eissfeldts' testimony and their declaration of intent to remain in South Dakota. First, their declaration is not conclusive. *Eastman v. City of Madison*, 117 Wis.2d 106, 342 N.W.2d 764 (App. 1983); Restatement (Second) of Conflicts of Law § 20 special note (1971); *McCarthy v. Phila. Civil Serv. Comm'n*, 19 Pa.Commw. 383, 339 A.2d 634, 637 (1975), *aff'd.* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (per curiam). Second, scrutiny of their testimony indicates that it is inconsistent and its credibility is suspect.

In spite of a declaration of their intent to remain in South Dakota, Eissfeldts' actions speak louder than words. After a business failure, John Eissfeldt began helping his father-in-law, Scott, in farming operations in South Dakota, Oklahoma, and Canada. They came to South Dakota only to plant and harvest crops. When they came to South Dakota in 1983, they brought with them only a pickup load of furniture, leaving the bulk of their items in their home owned in Massachusetts. In fact, in December of 1983 they returned to Massachusetts and did not permanently leave that state until March of 1985.

The record reveals that Eissfeldts were something less than candid with the trial court. John testified that he had received a Kingsbury County gun permit in 1983; however, he in fact never did receive such a permit. John (and Karen) testified that his son Peter was enrolled in school in Lake Preston in 1983; however, it was stipulated by both counsel that were the administrator for the Lake Preston school system to testify, he would have said that there were no records of the child having been enrolled

in that school system for the 1983 school year. John stated that he had established a bank account in June or July 1983; in fact, only a small savings account had been opened by *Karen.* Karen testified that she had not attempted to change the residency blank on the birth certificate to Riceton, Canada; however, the testimony of the Kingsbury County Register of Deeds indicates that Karen had requested the register of deeds to change the residency blank.

The totality of the evidence indicates that Eissfeldts were in South Dakota *temporarily* to help with farm work. (In fact, as stated earlier, by their own admission, had the baby not been premature, they would not have been in South Dakota.) They took none of the steps ordinarily taken by one who contemplates a permanent move or establishment of residence; in fact, it appears that subsequent to the birth of the child and because of this litigation they have come up with excuses for the nonexistence of the statutory factors which are traditionally indicative of residency or took action in an attempt to remedy their prior omissions. (i.e., they registered to vote in *1984* ).

The trial court's findings of residence in Kingsbury County was clearly erroneous and not supported by competent or substantial evidence. *Spurlin, supra; Wiggins v. Shewmake,* 374 N.W.2d 111 (S.D. 1985); *Zee v. Assam,* 336 N.W.2d 162 (S.D. 1983).

Reversed.

All the Justices concur.