JUDITH A. TEMBY, Secretary Board of Regents of the University ofWisconsin System
You have requested my opinion as to whether the provisions regarding mandatory arrest in section 968.075, Stats., apply to roommates living in university residence halls or privately owned residence halls serving students at the University of Wisconsin campuses. Secondly, you ask, if section 968.075 applies to such roommates, what discretion may law enforcement officers utilize in applying the mandatory arrest provision of that statute?
I conclude that the provisions of section 968.075 do apply to roommates living in residence halls regardless of whether the halls are owned by the university or private persons. Section968.075 was created by 1987 Wisconsin Act 346. Section968.075 (2) creates a mandatory custodial arrest situation whenever an officer has probable cause to believe a suspect has committed a crime which meets the statutory definition of domestic abuse and when one or both of two further conditions are met. One must therefore look to the definition of domestic abuse to determine whether or not this statute comes into play in the dormitory roommate circumstance. Section 968.075 (1)(a), as amended by 1989 Wisconsin Act 293, defines "domestic abuse" as follows:
 "Domestic abuse" means any of the following engaged in by an adult person against his or her spouse or former spouse, against an adult with whom the person resides or formerly resided or against an adult with whom the person has created a child: *Page 110 
 1. Intentional infliction of physical pain, physical injury or illness.
2. Intentional impairment of physical condition.
3. A violation of s. 940.225 (1), (2) or (3).
 4. A physical act that may cause the other person reasonably to fear imminent engagement in the conduct described under subd. 1, 2 or 3.
Whether section 968.075 applies to roommates in residence halls turns on whether they fit in one of the categories of persons listed above. I will assume that the roommates are not married, have never been married to each other, and do not have a child in common. The issue, therefore, is whether the adult perpetrator (one roommate) commits an act covered by the statute against "an adult with whom the person resides or formerly resided." In short, the question is whether university residence hall roommates are "residing together" within the meaning of the statute. This requires an interpretation of the meaning of the term "resides together" as used in this statute.
The courts have clearly set forth the procedures for statutory interpretation. As stated in State v. Larson, 133 Wis.2d 320, 324,395 N.W.2d 608 (Ct.App. 1986):
 Any statutory analysis must begin with the language of the statute itself. State ex rel. Melentowich v. Klink, 108 Wis.2d 374, 379, 321 N.W.2d 272, 274 (1982). The initial inquiry of the court in construing a statute is whether the statutory language is clear or ambiguous. In re I. V., 109 Wis.2d at 409, 326 N.W.2d at 128-29. A statute is ambiguous if reasonably well-informed persons could differ as to its meaning. Kollasch v. Adamany, 104 Wis.2d 552, 561, 313 N.W.2d 47, 51-52 (1981). Once the statute is determined to be ambiguous, it is the court's task to "achieve a reasonable construction which will effectuate the statute's purpose." Melentowich, 108 Wis.2d at 380, 321 N.W.2d at 275. In this regard, extrinsic materials, particularly the statute's legislative intent, can be valuable interpretive aids. *Page 111 Milwaukee County v. DILHR, 80 Wis.2d at 452, 259 N.W.2d at 121.
Two interpretations of the term "resides" could be offered. First, it could be argued that "resides together" means that this is the person's permanent residence or legal domicile. Since many college students maintain a permanent residence or legal domicile with their parents, one might conclude that they are not "residing together" within the meaning of this statute. It can be argued that this interpretation is sensible in light of the fact that students are frequently assigned roommates and do not voluntarily choose a particular roommate.
On the other hand, it can be argued that "resides together" means merely a current dwelling situation, that the persons are living together in a day-to-day relationship, regardless of where their permanent residence or legal domicile may be located. It may be argued that since the pressures attendant to a day-to-day household relationship will exist in any living arrangement regardless of its voluntary nature, this interpretation addresses precisely the evil the domestic abuse statute is designed to reach and correct.
I believe, therefore, that the term "resides" is ambiguous as used in the statute. As stated in In re National DiscountCorporation, 196 F. Supp. 766, 769 (1961):
 In statutory construction, it is settled that "reside" is an elastic term to be interpreted in the light of the purpose of the statute in which such term is used; "reside" is a term whose statutory meaning depends upon the context and purpose of the statute in which it occurs. (Cites omitted.) . . . [W]hile a person may be said to have but one domicile, he may have several residences. (Cite omitted.)
Where "resides" or "residence" is interpreted by the courts to mean something akin to domicile the statutes are generally dealing with entitlement to legal rights or obligations: right of election against a will, Estate of Daniels, 53 Wis.2d 611,193 N.W.2d 847 (1972); entitlement to employment, Eastman v. City *Page 112 of Madison, 117 Wis.2d 106, 342 N.W.2d 764 (Ct.App. 1983). Similarly where our Legislature has defined residence, specifically for purposes of a particular section, to mean something akin to domicile the section is dealing with entitlement to a legal right or obligation: campground registration fees, section 27.01 (10); fish and game licenses, section 29.01 (12); risk sharing plans, section 619.10 (9); public assistance, section49.01 (8g); Mental Health Act, section 51.01 (14); student grants, section 39.30 (1)(e); and student loans, section 39.32 (1)(b).
In fact, domicile and residence are distinct, though similar, concepts. As stated in Estate of Daniels, 53 Wis.2d at 614-15,
 It might be said that "domicile" includes residence but "residence" does not necessarily include domicile. Domicile is generally regarded as the place where a man has his fixed and permanent home or residence to which he intends to return whenever he is absent therefrom. It is not a residence for any special or temporary purpose but one intended to be permanent for an unlimited or indefinite period.
Black's Law Dictionary 1176 (5th Ed. 1979) explains: "Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile." It is the fixed and permanent nature of the "domicile" that makes domicile the relevant interpretation of "residency" for purposes of determining certain legal rights or obligations.
By contrast, however, section 968.075 is not concerned with determining legal rights or obligations. Instead, the Legislature was concerned that in the past, those in certain relationship situations were not being protected by the criminal justice system in the same fashion as the rest of society. Section 968.075
attempts to ensure that those in particular relationships receive the protection of the criminal laws.
In 1987 Wisconsin Act 346 the Legislature stated its intent in creating section 968.075, in part, as being: *Page 113 
 (1) The legislature finds that societal attitudes have been reflected in policies and practices of law enforcement agencies, prosecutors and courts. Under these policies and practices, the treatment of a crime may vary widely depending on the relationship between the criminal offender and the victim of the crime. Only recently has public perception of the serious consequences of domestic violence to society and to individual victims led to the recognition of the necessity for early intervention by the criminal justice system.
 (2) The legislature intends, by passage of this act that:
 (a) The official response to cases of domestic violence stress the enforcement of the laws, protect the victim and communicate the attitude that violent behavior is neither excused nor tolerated.
 (b) Criminal laws be enforced without regard to the relationship of the persons involved.
. . . .
 (3) The purpose of this act is to recognize domestic violence as involving serious criminal offenses and to provide increased protection for the victims of domestic violence.
It is those in domestic situations that are to receive the benefit of this statute. Domestic as defined in Webster's Ninth New Collegiate Dictionary 374 (1984) means "of or relating to the household or the family." It is clear in looking at the statute that the Legislature intended to deal with more than violence in the family but rather took the more expansive view of including those in a household relationship. The statute's protection applies to family relationships, e.g., spouse or former spouse and *Page 114 
relationships where adults are living together regardless of familial ties.[1]
It, therefore, appears clear that this statute is aimed at providing equal protection and enforcement of the laws to those involved in certain relationships, either familial or household, irrespective of the permanency or duration of the relationship. The statute does not turn on whether the parties are living in a permanent legal domicile but rather whether there exists a familial or household relationship with all the attendant stresses.
I conclude, therefore, that "resides together" for purposes of section 968.075 includes college dormitory roommates regardless of their place of legal domicile. It also is irrelevant whether the roommates were assigned or voluntarily chosen or whether the dormitories are publicly or privately owned. In fact, in situations where two adults are living together, having been assigned as roommates, the pressures and tensions of the relationship may be even greater and therefore more needing of protection than situations where roommates are voluntarily chosen.
In light of the fact that the provisions of section 968.075 apply to college dormitory roommates, you question what discretionary authority law enforcement officers have in applying the mandatory arrest provision of that statute. The officer's obligation under the mandatory arrest provision is set forth in section968.075 (2), Stats. That provision requires that an officer shall *Page 115 
arrest and take a person into custody in the following circumstances:[2]
 (1) The officer has probable cause to believe the person is committing or has committed domestic abuse (as defined above), and
 (2) The officer has probable cause to believe that those acts constitute the commission of a crime, and
(3) either (or both exist)
 a) the officer has a reasonable basis to believe continued domestic abuse against the alleged victim is likely, or
 b) there is evidence of physical injury to the alleged victim. (This does not require that the injury be visible).
The responding officer, therefore, in conducting his or her investigation must determine, under the totality of the circumstances, whether all three of the above criteria are met. If the answer is yes, the officer must place the person under arrest and take that person into custody.
If the officer concludes that the first two criteria are met (a domestic abuse-type crime has occurred) but the third criteria is missing, the officer must apply the agency's pro-arrest policy required by section 968.075 (3)(a)1.a.[3] In other words, in this *Page 116 
latter circumstance the officer should strongly consider making an arrest but may exercise discretion under all the circumstances. It should be noted that if the officer does not make an arrest in this situation, he or she must forward a report to the district attorney immediately after the investigation is completed stating why an arrest was not made. Sec. 968.075 (4), Stats.
DJH:RB
[1] Former section 968.075 (1), Stats. (1987-88), included the family relationship of any "adult relative." The Legislature, however, recently passed 1989 Wisconsin Act 293 which deleted this provision. Act 293 also added a category "against an adult with whom the person has created a child" to those included in the definition of domestic abuse. These changes emphasize that, where there is not a marital relationship or a relationship created due to a child, it is the living together nature of the relationship, regardless of family ties, which is important.
[2] Section 968.075 (2)(b) also provides that the mandatory arrest provisions apply "only if the report is received, within 28 days after the day the incident is alleged to have occurred, by the officer or the law enforcement agency that employs the officer."
[3] Section 968.075 (3) states in part:
 (a) Each law enforcement agency shall develop, adopt and implement written policies regarding arrest procedures for domestic abuse incidents. The policies shall include, but not be limited to, the following:
1. Statements emphasizing that:
 a. In most circumstances, other than those under sub. (2), a law enforcement officer should arrest and take a person into custody if the officer has reasonable grounds to believe that the person is committing or has committed domestic abuse and that the person's actions constitute the commission of a crime. *Page 117