RHEA MANUFACTURING COMPANY, Respondent, vs.
INDUSTRIAL COMMISSION, imp., Appellant.

*January 10—June 21, 1939.*

*Stanley Rector* and *Arthur Barber,* both of Madison, for the appellant.

For the respondent there were briefs by *Scheinfeld, Collins, Durant & Winter* of Milwaukee, and oral argument by *Elmer L. Winter.*

A brief was also filed by *Elias Lieberman* of New York City, attorney for the International Ladies Garment Workers Union, as *amicus curiæ.*

The following opinion was filed May 9, 1939:

WICKHEM, J. Plaintiff is engaged in the manufacture of ladies' dresses and operates a factory in Milwaukee under an all-union agreement with a local of the International Ladies Garment Workers Union. Defendant Bagniewski was a temporary employee working on a so-called "dollar" dress line at a wage of thirty-two and one-half cents an hour. She worked under a temporary working permit executed by the local union and reading as follows:

"TEMPORARY WORKING PERMIT.

"Dated February 12, 1937.  Rosemary Bagniewski,
"Button  2674 S. 13th Street.
    "Has been directed to work in the shop of the Rhea Manufacturing Company, 203 North Water Street. This is a temporary Working Card and is subject to cancellation at any time without notice.
"Issued by Cele Siglinski.
"Expires February 26.
    "Internal' Ladies' Garment Workers Union,
    "1012 North Third Street, Room 204,
    "Milwaukee, Wisconsin,
    "Phone Marquette 7572."

Miss Bagniewski had thirty-five cents deducted from her wages and paid to the union each week, but she was never

initiated into the union, had no vote or voice in its affairs, and simply had the privilege of working temporarily in the shop of the plaintiff company as a return for the small weekly payments. While this temporary permit expired as indicated on its face February 26, 1937, Miss Bagniewski never went back for a new card or a renewal of her permit. During September, 1937, negotiations began between the employer and union bargaining committee for a new all-union agreement to run from September 30, 1937, to September 30, 1938. One of the union demands was an increase in basic pay rate of the "dollar line" workers from thirty-two and one-half cents to thirty-five cents an hour. The employer refused this demand, and the union insisted that it would not permit the manufacture of these dresses unless the increase were granted. Thereupon, the employer, apparently without serious objection on the part of the union, elected to discontinue manufacture of the "dollar line." As a result of this determination on the part of the employer, Miss Bagniewski and a considerable number of other temporary workers were laid off because of lack of work. Thereafter, Miss Bagniewski filed and renewed a claim for unemployment benefits under ch. 108, Stats. The report of the employer denied benefits upon the ground that the employee had refused work. The employee having objected to employer's denial, the matter was investigated by a district examiner of the unemployment compensation department, and the position of the employer was overruled. Thereafter, upon request of the employer, a hearing was held before an appeal tribunal organized under sec. 108.09 (4), Stats. The appeal tribunal consisted of a commission examiner, a representative of industry, and a representative of labor. On February 12, 1938, the appeal tribunal issued its decision wherein after making certain findings of fact it found that Miss Bagniewski's employment was terminated because of lack of work; that she was not offered suitable employment within the

meaning of sec. 108.04 (6), Stats.; and that she was entitled to unemployment benefits. Upon a petition for a review by the Industrial Commission of the appeal tribunal's decision, the Industrial Commission on February 17, 1938, affirmed the decision of the appeal tribunal. Plaintiff then brought this action in the circuit court for Dane county to review the Industrial Commission's decision. The question there litigated was the application to the facts of sec. 108.04 (4), Stats., the material portions of which provide:

"An employee's eligibility, for benefits based on those credit weeks then accrued with respect to an employer, shall be barred for any week of unemployment completed after: . . . (b) He has left his employment voluntarily without good cause attributable to the employer. . . ."

and sec. 108.04 (6), Stats., which provides:

"A claimant shall no longer be eligible for total unemployment benefits and the liability of his past employers to pay him such benefits based on his past employment shall cease for any period after he has without good cause refused to accept suitable employment when offered to him. . . ."

It was the view of the trial court, (1) that for purposes of contracting with her employer Rosemary Bagniewski was a member of the union; (2) that in the negotiations of September, 1937, the union was her representative; (3) that prior to these negotiations she had had uninterrupted employment so far as plaintiff was concerned; (4) that at the conference she served notice on plaintiff through her representative, the union, that she would not continue in the employment which she had unless she received a certain increase in wages; and (5) that when plaintiff declined this demand and in effect said that if it were insisted upon plaintiff would have to discontinue the line of business in which she was then employed, she, through her representative, the union, in effect stated that she had no objection to the employer's quitting that line of business. It was the court's conclusion that

Miss Bagniewski voluntarily left her employment and was not dismissed by plaintiff.

Upon this appeal we have been favored with learned and extensive briefs covering every possible phase of this matter, but it appears to us that only a very narrow question is essentially involved, and since the field is completely new we deem it inadvisable to give any more extended scope to the decision than is necessary to dispose of the case. There is a great deal of argument in the briefs as to the standing of the findings of the commission, whether there is evidence to support them, and to what extent this court is bound by them. An examination of the record discloses neither conflict of fact nor inference material to a determination here. What Rosemary Bagniewski, the employer, and the union did are undisputed, and there is no room for conflicting inferences having any bearing upon the controversy. The question is whether under all of the facts of this case Rosemary Bagniewski in legal contemplation voluntarily left her employment. In this connection it appears to us that only sec. 108.04 (4), Stats., is involved here. This section specifically relates to the initial termination of work for which unemployment benefits are provided in the act. Sec. 108.04 (6), Stats., prescribes the circumstances under which a claimant who has been eligible for benefits loses this eligibility by declining suitable work. Since in this case the question relates to the initial eligibility of claimant, it seems clear that only sec. 108.04 (4), Stats., has any application. In this case it is certain that Rosemary Bagniewski was ready and willing at all times to continue her work even at the former wage scale of thirty-two and one-half cents an hour. Hence, the question is whether by reason of her temporary working permit and her payment of dues she made the union or its collective-bargaining committee her agent with the result that in legal effect she consented to the abolition of her job and voluntarily left her employment.

A considerable portion of the briefs is devoted to the contention of Miss Bagniewski that even if she is properly to be treated as a member of the union, the latter was not her agent to quit her job for her. The question presented is novel and interesting. The effect of contracts between a labor union and an employer upon the individual rights of members of the union has been considered in several cases. In these cases the employee has attempted to sue his employer upon the contract and to claim rights thereunder. So far as we can discover, there have been no cases in which the question was raised as to what contractual duties or burdens, if any, are imposed upon an employee who is a member of a union which has a contract with his employer. So far as the cases have upheld rights in the individual employee under the collective-bargaining contract, the basis of the holding has been either, (1) that by usage and custom the terms of the collective-bargaining agreement when brought to the notice of the employee are assumed to have become a part of his contract with his employer if he thereafter continues in the employment. *Cross Mountain Coal Co. v. Ault,* 157 Tenn. 461, 9 S. W. (2d) 692; *Mastell v. Salo,* 140 Ark. 408, 215 S. W. 583; *Burnetta v. Marceline Coal Co.* 180 Mo. 241, 79 S. W. 136; (2) that the collective-bargaining agreement is a contract for the benefit of the members of the union and governed by the principles applicable to such contracts. *Gulla v. Barton,* 164 App. Div. 293, 149 N. Y. Supp. 952; *Hall v. St. Louis-San Francisco Ry. Co.* 224 Mo. App. 431, 28 S. W. (2d) 687; *Trustees of Wis. S. F. of Labor v. Simplex S. M. Co.* 215 Wis. 623, 256 N. W. 56; or (3) that the union is the agent of the employee, and when the contract between the union and the employer is ratified by the individual members of the union, it becomes a contract with the workman individually. *Barnes & Co. v. Berry* (6th Cir.), 169 Fed. 225; *West v. Baltimore & O. R. Co.* 103 W. Va. 417, 137 S. E. 654. For other cases see 95 A. L. R. 10, note.

None of these cases are directly in point, and we consider it unnecessary and inadvisable to determine here whether they establish principles applicable to this appeal upon the assumption that Miss Bagniewski belonged to the labor union.

Plaintiff cites three cases in which a member of a labor union brought action against the union itself, either to restrain the latter from acts resulting in plaintiff's loss of employment or to recover damages resulting from such acts. In *O'Keefe v. Local 463 of United Ass'n of Plumbers*, 277 N. Y. 300, 14 N. E. (2d) 77, plaintiffs sought to restrain a local union from prohibiting their employer from rehiring plaintiffs as plumbers and to recover damages for loss of work while unemployed. Plaintiffs were members in good standing of the defendant union. It came to the union's attention that the employer was paying an employee less than the wages fixed in the working agreement. A resolution was adopted that all plumbers be furnished to the employer by the defendant union for a period of three years. The union then recommended that all plumbers working for the employer be removed from the job for one year, and plaintiffs lost their jobs as a result of this action. The court held that there was no cause of action against the union so long as the union acted in good faith and without malice, and that the union's action was reasonably calculated and necessary to advance the objects of the union and did not violate any duty to the members.

In *Ryan v. Hayes*, 243 Mass. 168, 137 N. E. 344, an agreement had been consummated between the union and the employer under which the latter agreed to hire only union men. The union determined that all jobs should be given out by its business agent in rotation. When plaintiff applied for work he was informed that he must become a member of the union and did so. He was subsequently dismissed upon request of the union on the ground that he had been put at the foot of the working list and would have to await his turn

before he could receive work. The court held that plaintiff was without redress and that in joining the union he engaged to be bound by its rules and subjected himself to its discipline.

In *Hartley v. Brotherhood of R'y. and S. S. Clerks,* 283 Mich. 201, 277 N. W. 885, plaintiff brought action against a union of which she was a member to recover damages for breach of contract on the theory that having created rights in her by a collective agreement the union could not subsequently enter into another agreement whereby these rights were altered or destroyed. The order of the union to which objection was taken was to the effect that all married women were to be relieved from service regardless of seniority. This order resulted in plaintiff's dismissal from her employment. The court held that plaintiff had no cause of action; that her seniority rights were created by contract between the employer and the union and not by reason of any agreement between the employer and plaintiff; that it was within the power of the union when by reason of changed circumstances it considered that the contract should be modified in the interests of all the members so to modify the contract notwithstanding the adverse effect upon plaintiff.

None of these cases are of any help in the present situation. The cases seem rather to state an exception to the rule of *Lumley v. Gye,* 2 El. & Bl. 216, and to hold that a labor union acting in good faith and without malice may negotiate contracts for the general good of the union although this may disturb or affect adversely the relations of individual members with the employer. In view of the state of the authorities and of the fact that the field is new, we express no opinion as to the proper disposition of this case, assuming Rosemary Bagniewski to have been a member of the union. Such a determination is unnecessary because it is evident that Miss Bagniewski was not a member of the union. The situation seems perfectly plain to us. Plaintiff was operating a closed shop under an agreement between itself and the union. Being a closed shop the employer was required to employ union members only. The necessities of the business, how-

ever, required that at times temporary employees be hired. The union was agreeable to the hiring of such employees provided each procure from the union a temporary permit to work and pay weekly dues during the period of employment. The very fact that temporary employees had to work under a permit from the union is strong evidence that they were not members of the union. The permittees had no vote in the affairs of the union and no voice in any bargaining with the employer or in selecting a bargaining group to accomplish this purpose. They neither authorized the union to bargain for them nor consented to be bound by any bargaining conducted by the union. Under these circumstances, we find it impossible to discover any basis upon which the acts of the union could be held so to bind Rosemary Bagniewski as to make her quitting voluntary. The most that could be said is that by reason of its position and numbers the union was a proper bargaining agent for all the employees. If it was, the source of its power was not any act on the part of Miss Bagniewski and neither the acts of the union nor its contracts with the employer can be considered her acts in the absence of some conduct by her from which may be inferred consent on her part to the bargaining or to its results.

Some argument is made to the effect that the act of the employer in discontinuing the work upon which Miss Bagniewski was engaged was not voluntary in any real sense, but that he was in effect coerced by the threat of industrial strife and virtually compelled by the union to take the course that he did. This raises an immaterial issue. As we read the act the voluntary or involuntary quality of the employer's act is of no consequence. The material question is whether the employee quit voluntarily. Whether the situation here presented results in an injustice to the employer is a question that can only properly be debated in the legislature. The act is clear and must be given effect according to its terms.

For the foregoing reasons it is the conclusion of the court that the trial court was in error in setting aside the award, and that the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the order of the Industrial Commission.

FAIRCHILD, J. (*dissenting*). It seems to me that the opinion does not take into account the purpose of the statutes relating to the collective-bargaining process, and the necessary effect of those statutes upon the relationship between the individual employee and his employer. The Unemployment Compensation Act, ch. 108, Stats., was enacted several years before the Labor Relations Act, ch. 111, Stats., and the latter does not amend the former, but both are now law, and the Labor Relations Act, since it prescribes how employees are to express their will in certain matters, must necessarily be considered in deciding questions arising under the Unemployment Compensation Act. Behind both laws was the desire to improve and strengthen the position of employees. The object sought to be accomplished by the Labor Relations Act was to reduce the necessity for strikes and lockouts by providing a way in which all employees may act together and by making it possible for the employer to deal with representatives known to act for all the employees. If the employer is in a position to deal with an authorized representative of the employees and to arrive at a definite understanding which both employer and employee will be bound to respect, the probability of disastrous strife may be lessened.

Whether Rosemary Bagniewski should be held to have left her employment voluntarily, within the meaning of sec. 108.04 (4), Stats., depends upon the legal effect of her voluntary act in accepting a temporary working permit from the union. Did she consent to let the union act as her representative for the purpose of bargaining as to employment? Did she agree to permit the union to exercise control over her job? Was she bound by whatever the union might see fit to do in performing its ordinary function as representative of

the employees? These questions cannot be answered without taking into account the purpose of the Labor Relations Act. In sec. 103.51 it is declared that the individual unorganized worker is helpless to exercise actual liberty of contract and thereby to obtain acceptable terms and conditions of employment. The purpose of the act is to encourage workers to act together, and to protect their right to do so without interference by their employers.

It is unnecessary to look to cases decided before the act went into effect in order to find authority for holding that what is done by the collective-bargaining representative is binding upon the individual employee. It is unnecessary to rely upon usage and custom, or upon the beneficiary-contract doctrine, or upon common-law principles of agency and ratification. The policy of collective bargaining is settled down upon the parties by law. Except in presenting grievances, individuals or minority groups have no access to the employer for the purpose of bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment, because the statute, sec. 111.09 (1), provides:

"Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment, provided that any individual employee or group of employees shall have the right at any time to present grievances to their employer in person or through representatives of their own choosing. . . ."

We should not lose sight of the fact that the most important weapon in the hands of the collective-bargaining representatives is the threat of strike if the employer refuses to come to terms. The individual authorizes his collective-bargaining representative to use this threat; in effect he author-

izes the representative to refuse work if the terms are not satisfactory.

"Collective bargaining" is a stronger term than "negotiation." An employer cannot afford to enter into a contract which binds him but does not bind individual workers. The strike could not be avoided by such a method. There is no bargaining unless there are concessions made on both sides, and the employer is not likely to make concessions which are binding upon him unless the employees' representative is in a position to make concessions which will bind the individual workers. Unless the representative is able to speak for all the employees, nothing can be accomplished in the way of avoiding strikes.

In the present case, the employer's only choice was to discontinue the particular dress line or become involved in trouble with all of the employees. A witness who had represented the union in the negotiations which resulted in discontinuance of the dollar line testified as follows:

"*Q.* In this conference something was said about this? *A.* Referring to wages; we asked for a raise on the dollar line.

"*Q.* How much of a raise? *A.* From 32½¢ an hour to 35¢ an hour.

"*Q.* What did the Rhea representative say? *A.* They were entirely against it.

"*Q.* Why? *A.* They said they were already working many on that basis and couldn't pay 35¢ an hour.

"*Q.* What did Mr. Dolnick [union business agent] say? *A.* Well, if they couldn't pay 35¢ an hour the answer was that they couldn't make the dollar dresses."

Rosemary Bagniewski voluntarily took employment in a shop in which, by virtue of agreement and by statute, the International Ladies Garment Workers Union was the exclusive representative of all employees for the purposes of collective bargaining. She was bound by what her representative did on behalf of all employees. When the union

consented to discontinuance of the dollar line, she consented. In my opinion, the trial court was correct in ruling that in contemplation of law she voluntarily left her employment without good cause attributable to the employer. Through her representative she refused to work for less than thirty-five cents per hour. Her claim for unemployment compensation is therefore barred by sec. 108.04 (4), Stats.

I am authorized to state that Mr. Justice MARTIN concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on June 21, 1939.