Dean A. HANSON, Plaintiff-Appellant,

v.

MADISON SERVICE CORPORATION, Defendant-Respondent.

Court of Appeals

*No. 88-0252. Argued November 17, 1988.—Decided May 11, 1989.*

(Also reported in 443 N.W.2d 315.)

For the plaintiff-appellant there were briefs by *Rosemary J. Fox* and *Fox, Fox, Schaefer & Gingras, S.C.,* of Madison, and oral argument by *Rosemary J. Fox.*

For the defendant-respondent there was a brief by *James C. Herrick, Michael J. Westcott* and *Edith F. Merila,* and *Axley Brynelson,* of Madison, and oral argument by *Michael J. Westcott.*

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J. This is an employment termination case in which the employee, Dean A. Hanson, a Madison bus driver, claims that he was denied due process of law because of the failure of his employer, Madison Service Corporation (MSC), to provide him with constitutionally required pre- and post-termination hearings. Hanson appeals from an order overturning a jury verdict, which found that he had not received an adequate pretermination hearing, and refusing to reconsider an earlier ruling that the post-termination procedures provided by MSC were constitutionally adequate.

We agree with the trial court's ruling that Hanson received adequate post-termination process, and we also agree, and the parties concede, that the trial court's reasons for granting judgment notwithstanding the jury's verdict have been nullified by an intervening United States Supreme Court decision.[1] We therefore reverse

---

[1] The case went to the jury on the single question of whether

the order insofar as it overturned the jury's verdict, and insofar as it declined to grant Hanson's motion for summary judgment on the issue of denial of his pretermination due process rights. We also conclude that he is enti-

Hanson had received adequate pretermination process and the jury found that he had not. The trial court, however, granted MSC's motion for judgment notwithstanding the verdict on grounds that Hanson had failed to comply with sec. 893.80(1)(a), Stats., which prohibits actions against government bodies or officers unless the plaintiff files a notice of his or her claim with the appropriate agency within 120 days of the event giving rise to the claim. The court relied on *Felder v. Casey,* 139 Wis. 2d 614, 630, 408 N.W.2d 19, 26 (1987), a case in which the Wisconsin Supreme Court had held that compliance with sec. 893.80 was necessary in order to bring a suit alleging a federal-law claim in state court.

After the trial court's ruling, the United States Supreme Court reversed *Felder,* holding that no such notice was required, and thus nullifying the basis for the trial court's decision. *Felder v. Casey,* 487 U.S. —, 101 L. Ed. 2d 123 (1988). MSC argues that we should nonetheless affirm the court's judgment on grounds that, as a matter of law, it was entitled to summary judgment and the court erred when it denied that motion earlier in the proceedings. While Hanson contends that MSC has waived the issue by failing to file a cross-appeal from the denial of its motion for summary judgment, we do not believe it should be held to have done so. The trial court's judgment overturning the jury's verdict was a judgment in MSC's favor and was supported by controlling Wisconsin case law at the time. MSC thus had no reason to cross-appeal from the denial of its earlier summary judgment motion, and we are satisfied that, under the somewhat unusual circumstances of this case, it should be allowed to be heard on the issue, which has been thoroughly briefed and argued by the parties. *See Weber v. City of Cedarburg,* 125 Wis. 2d 22, 30 n. 5, 370 N.W.2d 791, 795 (Ct. App. 1985), *aff'd,* 129 Wis. 2d 57, 384 N.W.2d 333 (1986) (cross-appeal unnecessary to raise error which, if corrected, would sustain judgment appealed from).

tled to only nominal damages not to exceed one dollar for the denial and remand to the trial court for this purpose. Finally, because Hanson has waived any claims for compensatory or actual damages by failing to request their inclusion in the verdict, we affirm the order in all other respects.

While the facts are simply stated, the procedural history of the case is more complex. Hanson was terminated from his employment after MSC, the company operating the bus system in the City of Madison, determined that he had been involved in five "chargeable" accidents within a four-month period in late 1978. Under the company's policy of "cumulative discipline" for drivers involved in traffic accidents, successive accidents are punished by increasing periods of suspension, and the fifth accident subjects a driver to discharge. All accidents in which city bus drivers are involved are reported to and reviewed by an "Accident Review Board" established by the collective bargaining agreement between MSC and the drivers' union. The board is comprised of two drivers, two representatives of MSC management, and a Madison police officer; and it is the board's function to determine whether a given accident should be "chargeable" against the driver for disciplinary purposes.

Hanson filed a grievance protesting his discharge, which MSC denied. After investigating the matter, Hanson's union determined that his grievance lacked sufficient merit to take to arbitration. Hanson then sued MSC and the union, claiming that MSC had discharged him in violation of his due process rights and that the union had breached its duty of fair representation by failing to take his grievance to arbitration. The trial court granted MSC's motion for judgment on the pleadings, concluding that both causes of action were barred

by the statute of limitations. Hanson, apparently agreeing in part with that decision, voluntarily dismissed his claim against the union and appealed the trial court's judgment insofar as it held that his action against MSC was untimely. We reversed, holding that a three-year, not a one-year, statute of limitations applied to his claims against the company, and we remanded the case to the trial court for further proceedings. *Hanson v. Madison Service Corp.*, 125 Wis. 2d 138, 370 N.W.2d 586 (Ct. App. 1985).

Both parties then moved for summary judgment. Hanson's motion claimed that judgment should be entered in his favor confirming the due process violations, and MSC's motion contended that Hanson's action should be dismissed because he had received all of the process that was due him. The court granted MSC's motion with respect to the post-termination procedures, holding that Hanson had received constitutionally adequate post-termination process; and it denied both parties' motions with respect to the pretermination procedures because it believed that issue required resolution by a jury. As indicated, the jury eventually found that the pretermination procedures were constitutionally inadequate and the trial court overturned that verdict on grounds which have since been vitiated by the supreme court decision. For reasons of continuity and ease of exposition, we consider the post-termination issue first.

## I. POST-TERMINATION PROCESS

The rights of an employee terminable only for cause, as Hanson was, are considered property rights which may only be abridged pursuant to procedures that are "constitutionally adequate" under the due process clause of the United States Constitution. *Cleveland Bd. of*

835

*Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). This means that the employee is entitled to notice and an opportunity to be heard prior to termination of his or her employment, and the right to post-termination procedures which provide an opportunity to challenge the merits of the discharge. *Id.* at 546–48.

In *Eastman v. City of Madison,* 117 Wis. 2d 106, 342 N.W.2d 764 (Ct. App. 1983), we noted that provisions in collective bargaining agreements providing for arbitration of employee grievances have been held adequate to satisfy due process requirements:

> The grievance-arbitration provisions of [the] collective bargaining agreement furnished [appellants] with an adequate opportunity to obtain a fair hearing in which to contest the allegedly arbitrary deprivation of [their] job, and therefore [they were] not deprived of a liberty-property interest in violation of due process.

*Id.* at 113, 342 N.W.2d at 768, quoting *Tufts v. United States Postal Service,* 431 F. Supp. 484, 488 (N.D. Ohio 1976) (other citations omitted; bracketing in original). In this case, the trial court ruled that Hanson was afforded constitutionally adequate post-termination process through the grievance/arbitration provisions of the collective bargaining agreement, and Hanson does not challenge the adequacy of those procedures. He argues, however, that because the union refused to take his discharge grievance to arbitration, he never had the opportunity to avail himself of that remedy and, as a result, his right to due process was effectively denied.

A union is the "exclusive bargaining representative" for its members and because the grievance procedure is "an integral part of the collective bargaining process,"

the union's exclusive agency continues with respect to the procedures designed to enforce the collective bargaining agreement—the grievance and arbitration provisions. *Malone v. United States Postal Service,* 526 F.2d 1099, 1108 (6th Cir. 1975). As a result, it has been held that an employee does not have the right to compel his or her employer to meet with him or her to adjust a grievance where, as here, the collective bargaining agreement gives the union control over the grievance machinery. *Id.* at 1107. In such a situation, the employee must rely on the union to exhaust his or her contractual remedies. *Id.*

The union, as the employees' exclusive representative, "must, of course, represent all employees fairly and in good faith." *Winston v. United States Postal Service,* 585 F.2d 198, 208 (7th Cir. 1978). The union has the obligation "to serve the interests of all members without hostility or discrimination . . . [and] to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177 (1967). It is a duty of fair representation, which may be breached if the union's decision not to pursue arbitration of a grievance in a given case is made arbitrarily or in bad faith. *Id.* at 193.

In *Winston,* the fired employees had the right under their collective bargaining agreement to grieve their terminations. At their request, the union advanced their grievances through the process. In Winston's case, however, the union declined to take an adverse decision on the grievance to arbitration and he claimed this violated his due process rights. The court disagreed and held that the procedures were constitutionally adequate, noting that: "[A]ppellants through their [union], had an opportunity to request arbitration of their grievances.

837

Although [the union] declined their requests to demand arbitration, appellants could have sued the Union for breach of its duty to fairly represent them if the refusal to demand arbitration was not in good faith." *Id.*, 585 F.2d at 210 (citations and footnotes omitted).

It appears, then, that Hanson's claim for the union's failure to take his grievance to arbitration is against the Union, not MSC. Indeed, Hanson initially joined the union in the lawsuit on grounds that, by failing to process his grievance, it breached its duty of fair representation. The cause of action could not be maintained, however, because the applicable statute of limitations had run.

Hanson argues that the union should not be allowed to "bargain away" or "waive" an individual member's constitutional rights, and that even though the failure to take the case to hearing was the result of the union's action, not MSC's, he nonetheless should be allowed to sue MSC for that failure. He relies on two cases, *Clark v. Hein-Werner Corp.*, 8 Wis. 2d 264, 99 N.W.2d 132 (1959), *cert. denied*, 362 U.S. 962 (1960), and *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086 (1978), in support of the argument. In our opinion, neither case compels the result he seeks.

In *Clark*, the issue was whether certain supervisory employees had the right to enjoin enforcement of an arbitration award obtained by the employees' union in proceedings on behalf of a group of other workers. The award affected the supervisory employees' seniority, and there was no question that their interests were directly adverse to the interests of the other employees the union had represented in the arbitration proceedings. The trial court issued the injunction and the supreme court affirmed on grounds that the union had breached the

duty of fair representation it owed to the supervisory employees by failing to give them notice and an opportunity to participate in the arbitration proceedings. In this case, Hanson offered no evidence and advanced no claim that the Union breached its duty to fairly represent him. Beyond that, *Clark* says nothing about an employee's ability to sue the employer for damages claimed to have resulted from the union's failure to take a grievance to arbitration. The employees in *Clark* sought only to enjoin enforcement of an arbitration award against them.

As for *Laffey,* Hanson points to a single sentence in the court's forty-one page opinion stating that: "Rights established under Title VII and the Equal Pay Act[2] are 'not rights which can be bargained away—either by a union, by an employer, or by both acting on concert." *Id.,* 567 F.2d at 447 (footnote omitted). He does not otherwise explain how the *Laffey* court's reasoning, or even its decision, applies to the facts of this case, and we see this as the type of undeveloped argument we generally will not address. *In Matter of Estate of Balkus,* 128 Wis. 2d 246, 255 n. 5, 381 N.W.2d 593, 598 (Ct. App. 1985).[3]

---

[2] Title VII (of the Federal Civil Rights Act of 1964) and the Equal Pay Act (adopted as an amendment to the Fair Labor Standards Act of 1938) generally prohibit sex discriminatory practices in employment.

[3] Even so, our reading of *Laffey* satisfies us that it does not control the issues before us. In that case, the union represented both airline stewardesses and pursers in pay negotiations, and the issue was whether the union's representation of the stewardesses precluded them from bringing a separate action against the employer under the Equal Pay Act. The court allowed the action based on its ruling that the airline and the union had together

839

We believe the trial court properly relied on *Winston* and *Malone* in holding that the grievance/arbitration provisions of the collective bargaining agreement provided constitutionally adequate post-termination process. Both cases dealt with the effect of a union's decision not to process an employee's grievance to completion, and both recognize the constitutional adequacy of the employee's "fair representation" remedies against the union in such situations. Hanson has not persuaded us that *Clark* or *Laffey* dictate a contrary result.

## II. PRETERMINATION PROCESS

MSC moved for summary judgment on grounds that its "cumulative discipline" policy afforded Hanson adequate pretermination due process and it argues that the trial court should have granted that motion as a matter of law. We follow well-established procedures in reviewing grants or denials of summary judgment. We first consider whether the complaint states a cause of action and, if so, whether the answer joins the issue. We then look to the moving party's affidavits to ascertain whether they state a *prima facie* case for relief—or where, as here, the moving party is the defendant, whether they state a *prima facie* defense. If so, we examine the opposing affidavits to see whether any material facts are in dispute. If they are, our inquiry ends and the motion must be denied. If there is no dispute of material fact, and if the record otherwise warrants, we proceed to consider the legal issues presented by the

negotiated a contract that violated the sex discrimination provisions of the Equal Pay Act. No such situation is present here.

motion. *See In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983).

As we have said, in addition to adequate post-termination process, Hanson had the right to a "hearing" prior to his discharge. *Loudermill,* 470 U.S. at 542. Hanson's complaint against MSC alleges that he was denied the opportunity to be heard on his discharge both before and after it occurred, and this states a cause of action for denial of due process. MSC's answer contains allegations and denials which join the issues. In support of its motion for summary judgment dismissing Hanson's claims, MSC filed the affidavit of William Ray, its transportation director, together with copies of the collective bargaining agreement, the reports that were filed with the accident board with respect to Hanson's several accidents, and the letters informing him of the various suspensions and his ultimate termination.

Ray's affidavit outlines MSC's accident suspension and termination policies—the increasing periods of suspension for successive accidents and discharge after the fifth "chargeable" accident. He states that an accident review board was established under the collective bargaining agreement to investigate all drivers' accidents, grading them as "chargeable," "preventable," or "nonchargeable." The board meets monthly and notices of its meetings are posted in various areas of MSC's offices which are "frequented by bus drivers in the Corporation's employ." The collective bargaining agreement provides that all determinations of the accident review board and all disciplinary actions against drivers based on the board's determinations are subject to grievance and arbitration.

Ray's affidavit also describes each of Hanson's five accidents. On September 1, 1978, his first day on the job, he was involved in two accidents and in a third on

November 14. Hanson prepared reports outlining his version of what occurred in each instance and filed them with MSC. The accident review board met and considered each accident, ruling that all were chargeable to Hanson, and he was notified in writing of the board's decision each time. MSC imposed a one-day suspension after the second accident and a three-day suspension after the third. Hanson did not file a grievance or otherwise challenge the board's findings with respect to any of the accidents or the company's imposition of the suspensions. On December 4, 1978, he was involved in a fourth accident, and slightly more than two weeks later, on December 22, a fifth. Reports were again filed, and Hanson was notified by letter that the fifth accident was under investigation by the review board. Several days later, on January 11, 1979, Hanson was informed that the board had determined that the fourth and fifth accidents were chargeable to him and that he was being discharged from his employment with the company because of the five accidents.

According to Ray's affidavit, Hanson then filed a grievance and participated in several meetings with representatives of the union and MSC in which the circumstances of his discharge were discussed. After these meetings, MSC reaffirmed its decision to terminate Hanson's employment. After investigation, the union decided not to pursue the grievance any further on Hanson's behalf, and thus the matter never proceeded to arbitration.

The affidavits and supporting materials indicate that Hanson had both general notice of MSC suspension and termination procedures and actual notice of the consideration of his accidents by the review board, as well as notice and opportunity to challenge the review board's determinations with respect to each accident. It also

indicates that, after the discharge, he had several meetings with MSC management regarding the merits of the company's action, and MSC had established grievance and arbitration procedures in the collective agreement. We consider these facts adequate to meet the requirement that the affidavit in support of the summary judgment motion state a *prima facie* defense to Hanson's due process claims.

Hanson's motion sought summary judgment confirming MSC's liability for discharging him in violation of his constitutional rights. Because a motion for summary judgment "carries with it the explicit assertion that the movant is satisfied that the facts are undisputed and that on those facts he [or she] is entitled to judgment as a matter of law . . . 'the practical effect of . . . bilateral summary judgment motions [is] the equivalent of a stipulation as to the facts.' " *Powalka v. State Mut. Life Assurance Co.,* 53 Wis. 2d 513, 518, 192 N.W.2d 852, 854 (1972), quoting *Wiegand v. Gissal,* 28 Wis. 2d 488, 495a–95b, 138 N.W.2d 740, 741 (1965). Despite that rule, the trial court, considering the factual record to be "inadequate," denied both MSC's and Hanson's motions without reaching the merits of many of the legal issues raised. As a result, we have, on our own, examined both sets of affidavits and proofs to determine whether there is a material dispute of fact which would prevent consideration of the merits of the parties' claims.

In support of his motion, Hanson filed excerpts from several depositions. The first, that of union steward Gene Gowey, simply acknowledges that the specifics of the "five-accident" suspension and termination policy were not set forth in the collective bargaining agreement. Excerpts from Hanson's own deposition describe his version of the accidents and corroborate at least one post-termination meeting involving himself and company and

union representatives, after which, in Hanson's words, the union "drop[ped]" his grievance.

Hanson's affidavit also contains excerpts from a deposition of William Ray in which Ray stated that he could not recall whether he talked to Hanson after the fifth accident and prior to the letter of termination. He also indicated that there was no formal "hearing" prior to the decision to discharge Hanson, and although he stated that it would be normal for him to discuss such a matter with the affected driver, he could not recall whether he had such a discussion with Hanson. He also acknowledged that no written notice was given to Hanson that he (Ray) and other MSC executives were discussing his discharge after receiving the report of the review committee following Hanson's fifth accident.

We see no material dispute of fact in the various affidavits and deposition excerpts filed by the parties in connection with the motions. And where there is no dispute of fact, and where it appears that a party is entitled to judgment as a matter of law, applicable rules state that judgment "shall" be granted. Sec. 802.08(2), Stats. We thus turn to the legal issue: whether Hanson was afforded constitutionally adequate pretermination process.

The issue is governed by *Loudermill*, where the court held that due process requires that an employee dischargeable only for cause (as Hanson was) must be given the opportunity for "some kind of a hearing," before his or her employment is terminated. *Id.*, 470 U.S. at 542. To meet the requirements of due process, the type of pretermination "hearing" afforded the employee "need not be elaborate"; the "essential requirements . . . are notice and an opportunity to respond." *Id.* at 545–46. And the nature of the post-termination remedies availa-

844

ble to the employee is an important consideration in the analysis. *Id.* at 546.

Hanson does not dispute the fact that the collective bargaining agreement gave him the opportunity to grieve and arbitrate not only his ultimate termination, but also each decision of the accident review board along the way. If it were equally clear that the company's "five-accident" policy was a firm and unyielding rule, we might be persuaded that those step-by-step grievance rights satisfied pretermination due process requirements. The record, however, indicates otherwise.

Ray's affidavit describes the policy as a "consistent policy" which "call[s] for the discharge of any employee involved in five 'chargeable' accidents within any 9-month period." Excerpts from Ray's deposition filed in support of Hanson's summary judgment motion, however, include his further explanation that MSC "[m]anagement has the right to make exceptions" to the policy, and Ray acknowledged that, after receiving word that Hanson's fifth accident had been ruled "chargeable" by the review board, he and other company managers met to discuss Hanson's case prior to the decision to discharge him. Because MSC management retained discretion to fire or retain drivers who accumulate five chargeable accidents, the pretermination due process requirements discussed in *Loudermill* and similar cases apply to that determination.

As indicated, the essentials of due process in the context of discharge of "tenured" employees are notice and the opportunity to respond; what process is due in a given case depends on the facts and circumstances of that case. Full-blown courtroom-style hearings are not required in any but the most unusual cases; generally, the opportunity to provide an oral or written response has been held to satisfy the "constitutional minima" of

due process. *Loudermill,* 470 U.S. at 542. The pretermination "hearing" "need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46.

Because employee dismissals may often involve factual disputes, *Loudermill* stresses the importance of "some opportunity for the employee to present his [or her] side of the [story]"—to present "plausible arguments" on "arguable issues" that "might . . . prevent[ ] . . . discharge"—at a point in the process which may represent "the only meaningful opportunity to invoke the discretion of the decisionmaker . . .." *Id.* at 543–44. The Court also indicated, however, that "[t]his is not to say that where [the employer's] conduct is entirely discretionary the Due Process Clause is brought into play. Nor is it to say that a person can insist on a hearing in order to argue that the decisionmaker should be lenient and depart from legal requirements." *Id.* at 543 n. 8 (citation omitted).

But whatever the form and nature of the "hearing," some opportunity to be heard prior to the decision to discharge is required by *Loudermill* and similar cases. And even though Hanson had the right to grieve and seek arbitration at every step along the way to his fifth chargeable accident, it is undisputed that MSC management retained discretion to retain or fire a driver after the fifth accident, and that Hanson had no opportunity to be heard on that decision. Under *Loudermill,* that is a violation of his pretermination due process rights, and summary judgment declaring that violation is warranted. But that does not end our inquiry. Because we have upheld the constitutionality of the post-termination pro-

cess available to Hanson, we must consider whether the relief he seeks in this action is available to him for the pretermination violation alone.

Hanson's complaint sought the following relief: (1) reinstatement to his former position; (2) backpay from the time of his discharge to such time as he may be reinstated; and (3) punitive damages.

After discovery was completed, MSC filed a motion in limine to exclude any evidence relating to damages for mental or emotional distress or for humiliation and loss of business reputation. The court granted the motion and while Hanson concedes the impropriety of evidence of mental or emotional distress, he contends that the court erred in barring evidence of humiliation and loss of business reputation.

The trial court's decision was grounded on the lack of any reference to humiliation and loss of business reputation in Hanson's complaint. Hanson, however, points to the appearance of the phrase "badge of infamy" in his amended complaint, and his argument, in its entirety, is that "[t]his should have sufficiently placed the respondent on notice for this claim [of humiliation and loss of business reputation] or at least on notice to inquire into the nature of the damages." No authority is cited in support of the single-sentence argument.

The *ad damnum* clause of Hanson's complaint does not include any claim for damages for humiliation or reputational injury, and the quoted phrase appears not in any of the damage allegations, but only in a brief allegation asserting a liberty interest in continued employment.

One of the purposes of pleading is to "notify the opposing party of the pleader's position in the case and to frame the issues to be resolved in the action for the

benefit of the litigants and the court." *Hansher v. Kaishian,* 79 Wis. 2d 374, 385, 255 N.W.2d 564, 570 (1977). The single phrase "badge of infamy" appearing in a lengthy complaint does not, in our opinion, give fair or reasonable notice that Hanson was pursuing a claim for injury to his business reputation, or damages for humiliation, as a result of the termination of his employment with inadequate process. The trial court properly granted the motion in limine.

As for the claims of damages for backpay and punitive damages, there is nothing in the record to indicate that Hanson ever objected to their exclusion from the verdict and instructions. In the absence of such an objection, the issue is waived and, under *State v. Schumacher,* 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988), we have no power to go beyond that waiver.[4]

We recognize that because the right to procedural due process is considered an "absolute" right in the sense that it does not depend upon the merits of a party's substantive assertions, violations of that right have been held to be "actionable for nominal damages without proof of actual injury." *Carey v. Piphus,* 435 U.S. 247, 266 (1978) (footnote omitted). Indeed, the Supreme Court stated in *Carey* that even if, on remand, the plaintiffs could not prove any damages arising from their due

_____

[4] Hanson suggests that it would have made no sense to object to the absence of damage questions in the verdict because the court had previously granted MSC's motion excluding evidence of humiliation and reputational injury and had also granted summary judgment dismissing all claims involving the post-termination process. Even so, the pretermination claims remained, and he still offered no evidence on the subject of damages, nor did he object to its omission from the verdict.

process deprivations, they still would be "entitled to recover nominal damages not to exceed one dollar . . .." *Id.* at 267 (footnote omitted). It thus appears that, where the violation of procedural due process is proved, but no actual damages can be established, the plaintiff is nonetheless "entitled" to nominal damages.

It is suggested here that Hanson should be regarded as waiving any right to nominal damages by not seeking their inclusion in the special verdict or, at the very least, moving the trial court for an award of nominal damages. While nominal damages have, in at least two cases, been presented to the jury,[5] we are not at all satisfied that that is such a generally-understood procedure that we should apply the waiver rule to Hanson for his failure to request a nominal damages question in the verdict. As for his failure to file a postverdict motion for such an award, it must be remembered that the court overturned the verdict in Hanson's favor and entered judgment for MSC. Under these circumstances, it would make little sense to require him to ask that nominal damages be included in that judgment.

We conclude that the trial court erred in denying Hanson's motion for summary judgment declaring that his right to pretermination due process was denied by MSC. However, because he has waived any compensatory and punitive damage claims for violation of his right to pretermination due process by failing to object to their omission from the verdict and instructions, he

---

[5] *See Westborough Mall, Inc. v. City of Cape Girardeau,* 794 F.2d 330, 339 (8th Cir. 1986), *cert. denied,* 480 U.S. 918 (1987); *Davenport v. DeRobertis,* 653 F. Supp. 649, 657 (N.D. Ill. 1987), *modified,* 844 F.2d 1310 (7th Cir.), *cert. denied,* — U.S. —, 102 L. Ed. 2d 248 (1988).

may recover no more than nominal damages for the violation.

We therefore affirm in part and reverse in part, and remand to the trial court with directions to enter judgment declaring the violation of Hanson's right to pretermination due process and setting nominal damages not to exceed one dollar, and dismissing his other claims.[6]

Finally, because Hanson has prevailed, in part at least, on one of his several claims, we must allocate the costs on appeal. As we have noted, Hanson sought reinstatement, backpay of $20,000 and punitive damages of $50,000. We have held that he is entitled to none of the relief requested. He has, however, prevailed on one of his arguments—that MSC did not provide him with the type of pretermination process required by the due process clause. Comparing the relief sought to the relief granted—a declaration of the violation and one dollar damages—and considering, too, the importance the Supreme Court has attached to redress of procedural due process deprivations even where those deprivations do not result in any actual damages, we conclude that Hanson should recover ten percent of his costs on this appeal, and that MSC should recover ninety percent of its appeal costs, and we so order.

---

[6] Hanson's action does not seek recovery for MSC's breach of his right as an employee to continued employment unless terminated for cause. While he does allege in his amended complaint that MSC did not have cause to fire him, he makes the allegation solely in the context of his constitutional due process claim: "[T]he discharge of the plaintiff without good cause by [MSC] constituted State action depriving the plaintiff of his job without due process of law . . .." As a result, any issues relating to what, if any, state law claim he may have to test MSC's cause to fire him are not before us on this appeal.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded with directions.

SUNDBY, J. *(dissenting).* This appeal presents a question of great significance to public employers and employees: Does the refusal of a union representing a public employee to arbitrate the employee's unlawful discharge claim bar the employee from maintaining an action under 42 U.S.C. sec. 1983 against the employer for the deprivation of the employee's property interest in his employment?[1] I conclude that it does not and therefore dissent.

In a series of cases, *Atchison, T. & S. F. R. Co. v. Buell,* 480 U.S. —, 94 L. Ed. 2d 563 (1987); *McDonald v. West Branch,* 466 U.S. 284 (1984); *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728 (1981); and *Alexander v. Gardner-Denver Company,* 415 U.S. 36 (1974), the United States Supreme Court has declined to hold that individual employees, because of the availability of arbitration, are barred from bringing claims under federal statutes designed to provide substantive guarantees to employees.

> Although the analysis of the question under each statute is quite distinct, the theory running through these cases *[McDonald, Barrentine, and Gardner-Denver]* is that notwithstanding the strong policies encouraging arbitration, "different considerations apply *where the employee's claim is based on rights*

---

[1] 42 U.S.C. sec. 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*arising out of a statute designed to provide minimum substantive guarantees to individual workers."* Barrentine, supra, 450 U.S. at 737. [Emphasis added in Lingle.]

*Lingle v. Norge Division, Magic Chef,* 486 U.S. —, 100 L. Ed. 2d 410, 422 (1988) (quoting *Atchison,* 480 U.S. at —, 94 L. Ed. 2d at 572-73).

*Lingle, Atchison, Barrentine* and *Gardner-Denver* are private sector employee cases. *McDonald* is a public sector case which involved a claim under sec. 1983.

In *Lingle* the question presented was whether an employee who had a contractual remedy under a collective bargaining agreement for discharge without just cause could enforce her state-law remedy for a retaliatory discharge. The court of appeals held that the state tort remedy was preempted by sec. 301 of the Labor Management Relations Act of 1947.[2] The *Lingle* court explained that sec. 301 preemption "merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." 486 U.S. at —, 100 L. Ed. 2d at 420-21 (footnote omitted). In other words, if a worker is granted substantive rights by state (or, by analogy, federal) law those rights may be enforced in court without reference to the grievance and arbitration procedure in a collective bargaining agreement, unless

---

[2] Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

the application of the law requires interpretation of the collective bargaining agreement. "Today's decision should make clear that interpretation of collective-bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." *Id.,* 486 U.S. at —, 100 L. Ed. 2d at 422 (footnote omitted).

The *Lingle* court did not reach the question of whether a union may waive its members' individual, nonpreempted state-law rights. *Lingle,* 486 U.S. at —, 100 L. Ed. 2d at 421 n. 9. The court noted, however, that under Illinois law, the parties to a collective bargaining agreement could not waive the prohibition against retaliatory discharge nor could they alter a worker's rights under the state worker's compensation scheme. *Id.* The court stated: "Before deciding whether such a state law bar to waiver could be pre-empted under federal law by the parties to a collective-bargaining agreement, we would require 'clear and unmistakable' evidence, in order to conclude that such a waiver had been intended." *Id.* (Citation omitted.) Analogously, before we decide that the parties to a collective bargaining agreement have waived an employee's federal statutory and constitutional rights, we should require "clear and unmistakable" evidence that the parties intended to do so. There is no "clear and unmistakable' evidence in this case that the union and MSC intended to waive members' and employees' access to the courts to enforce federal statutory and constitutional rights. There is a presumption against waiver of constitutional rights. *Okeson v. Tolley School Dist. No. 25, etc.,* 760 F.2d 864, 868 (8th Cir.), *rev'd on other grounds,* 766 F.2d 378 (1985).

853

The Wisconsin Supreme Court has held that a union which was the bargaining agent for all employees could not make a nonmember's termination of employment as a result of union negotiations a voluntary quit for unemployment compensation purposes. *Rhea Mfg. Co. v. Industrial Comm.*, 231 Wis. 643, 285 N.W. 749 (1939).

Wisconsin courts have entertained actions by individual employees to recover vacation pay provided in a collective bargaining agreement. *Skibb v. J.I. Case Co.*, 255 Wis. 447, 39 N.W.2d 367 (1949); *Pattenge v. Wagner Iron Works*, 275 Wis. 495, 82 N.W.2d 172 (1957). Some courts have extended judicial protection to employees whose interests are not being represented in the arbitral process simply because the union officials did not believe in the employee's claim. *Clark v. Hein-Werner Corp.*, 8 Wis. 2d 264, 270, 99 N.W.2d 132, 135 (1959).

*Clark* involved a dispute as to seniority rights. The court said:

> While the plaintiff employees had no seniority rights at common law, and such rights were created solely by reason of the labor contract negotiated in their behalf by the union, nevertheless they constitute a valuable property right and cannot be divested without due process of law. It is the contention of the union that no due-process problem is present, in holding the award binding upon plaintiffs' seniority rights, because the plaintiffs were represented by the union in the arbitration proceedings. The leading case on due process as applied to class representation is *Hansberry v. Lee* (1940), 311 U.S. 32, . . .. The opinion expressed the conclusion that, where the substantial interests of the representative are not necessarily or even probably the same as those he purports to represent, due process militates vigorously against giving the decision effect upon them." [*Clark*, 8 Wis.

2d at 273-74, 99 N.W.2d at 137-38 (citations and footnotes omitted)].

Hanson's allegation that the union withdrew his grievance without his knowledge or consent is uncontradicted. The union officials admitted that one of the reasons they did not pursue Hanson's grievance was his "low seniority." I conclude that the union's interests were antagonistic, or at least indifferent, to Hanson's and the holding of *Clark* is applicable.

There is authority that where the employee's property interest is created by legislation or a collective bargaining agreement, the extent of the process due the employee may be defined by the legislative act or the agreement. *See Arnett v. Kennedy,* 416 U.S. 134, *reh'g denied,* 417 U.S. 977 (1974) (plurality opinion) (no pretermination hearing required); *Winston v. United States Postal Service,* 585 F.2d 198 (7th Cir. 1978) (trial-type hearing not necessary); *Malone v. United States Postal Service,* 526 F.2d 1099 (6th Cir. 1975) (where collective bargaining agreement gives the union sole control of the grievance machinery, the employee must rely upon the union to exhaust his contractual remedies).[3]

---

[3] I note, however, that sec. 111.70(4)(d)1, Stats., of the Municipal Employment Relations Act, provides that, "[a]ny individual employee . . . shall have the right to present grievances to the municipal employer in person . . .." It has been suggested that the exclusive representation contemplated by MERA is for collective bargaining purposes and not the presentation of grievances to the employer. Note, *Municipal Employment Relations in Wisconsin: The Extension of Private Labor Relations Devices Into Municipal Employment,* 1965 Wis. L. Rev. 671, 678-79.

The first amendment to the federal constitution provides: "Congress shall make no law . . . abridging the . . . right of people . . . to petition the Government for a redress of grievances." Article I, sec. 4, Wis. Const. provides: "The right of the

The theory espoused in these cases has been dubbed the "positivist" theory. M. Finkin, *The Limits of Majority Rule in Collective Bargaining,* 64 Minn. L. Rev. 183, 253–55 (1980). Presumably, under this theory, the collective bargaining agreement would provide the exclusive forum in which the employee could obtain redress of an unlawful discharge. The "positivist" theory cannot be reconciled with the United States Supreme Court decisions I have discussed nor with *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985).[4]

---

people . . . to petition the government . . . shall never be abridged."

[4] *Malone* and *Winston,* which underpin the majority opinion, are of questionable precedential value. Each case involved employees of the United States Postal Service who, in the Postal Reorganization Act (PRA), were placed by Congress under the National Labor Relations Act and treated as if they were private sector employees. In *Winston* the court said: "The exclusive representation of nonpreference-eligible postal employees in labor-management relations under the PRA is no different from that of private sector employees under the National Labor Relations Act." 585 F.2d at 210.

*Malone* and *Winston* follow the "positivist" approach of the plurality in *Arnett v. Kennedy* (although the court in Winston disavowed the approach, 585 F.2d at 209 n. 30), which one commentator has dubbed the "what you get is what you see" approach. W. Van Alstyne, *Cracks in "The New Property": Adjudicative Due Process in the Administrative State,* 62 Cornell L. Rev. 445, 469 (1977). In other words, because the right to tenure was conferred by Congress, Congress was free to define the process due the employee to terminate that tenure. This approach is contrary to what has long been considered axiomatic—that the Constitution defines due process. "While the State may define what is and what is not property, once having defined those rights the Constitution defines due process . . .." *Arnett v. Kennedy,* 416 U.S. 134, 185 (1974) (White, J., concurring in part and dissenting in part).

Other courts have flatly held that a collective bargaining agreement operates as a waiver of the employee's right to due process. *See* M. Finkin, *supra,* at 250–53.

The United States Supreme Court decisions which I have discussed dispel the notion that a collective bargaining agreement can circumscribe an employee's state- or federal-law or constitutional rights, on either a "positivist" or a waiver theory. Further, neither theory can be applied to public employment; a public employer's rules contained in a collective bargaining agreement must withstand constitutional examination. M. Finkin, *supra,* at 255.

I anticipate the argument that this case does not involve an important statutory or constitutional right such as was implicated in the cited cases; all that is involved here is an alleged discharge without cause. *Gardner-Denver* involved an employment discrimination claim under Title VII of the Civil Rights Act of 1964; *Barrentine,* a violation of the minimum wage provisions of the Fair Labor Standard Act; *Atchison,* a Federal Employers' Liability Act complaint; and *Lingle,* a retaliatory discharge. *McDonald,* however, makes clear that Congress intended that sec. 1983 be judicially enforceable: 466 U.S. at 290.[5]

McDonald was a city police officer who claimed he was discharged without "proper cause." He exhausted his remedy under the grievance process but did not appeal the arbitrator's adverse decision. Instead, he began a sec. 1983 action. The Court held that the federal courts improperly accorded preclusive effect to the unappealed arbitration award. The Court stated that its previous rejections of a rule of preclusion in *Barrentine* and of deferral in *Gardner-Denver* "were based in large part

---

[5] Civil rights actions belong in court. *Burnett v. Grattan,* 468 U.S. 42, 50 (1984).

on our conclusion that Congress intended the statutes at issue in those cases to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes." (Citations omitted.) *McDonald,* 466 U.S. at 289. The Court said: "These considerations similarly require that we find the doctrines of res judicata and collateral estoppel inapplicable in this section 1983 action." *Id.* The Court further said: "[A]s we explained in *Mitchum v. Foster,* 407 U.S. 225, 242 . . . (1972), '[t]he very purpose of sec. 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law.' " *Id.* at 290.

The *McDonald* Court explained why arbitration "cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that sec. 1983 is designed to safeguard." 466 U.S. at 290. First, "[a]n arbitrator may not . . . have the expertise required to resolve the complex legal questions that arise in sec. 1983 actions." *Id.* (Footnote omitted.) "Second, because an arbitrator's authority derives solely from the contract, an arbitrator may not have the authority to enforce sec. 1983." *Id.* (Citation omitted.) "Third, when, as is usually the case, the union has exclusive control over the 'manner and extent to which an individual grievance is presented,' . . . .. The union's interests and those of the individual employee are not always identical or even compatible. As a result, the union may present the employee's grievance less vigorously, or make different strategic choices, than would the employee." *Id.* at 291 (quoting *Gardner-Denver Co.,* 415 U.S. at 58 n.19). "Finally, arbitral factfinding is generally not equivalent to judicial factfinding." *Id.*

These factors are all present in this case and militate against giving preclusive effect to the aborted grievance proceedings.

The seventh circuit has stated in dicta that, "*McDonald* does not decide whether an arbitration proceeding can satisfy the requirements of due process of law, and does not undermine the decisions that hold that it may." *Parrett v. City of Connersville, Ind.,* 737 F.2d 690, 697 (7th Cir. 1984), *cert. dismissed,* 469 U.S. 1145 (1985). The Court would have to disavow much of what it said in McDonald to conclude that the usual collective bargaining agreement grievance machinery is an adequate substitute for judicial enforcement of sec. 1983.

In any event, the question is not whether a grievance and arbitration procedure can satisfy a public employee's right to *procedural* due process, but whether the existence of a grievance and arbitration procedure precludes a public employee from litigating with the employer the employee's *substantive* claim under a federal statute or the federal constitution. *McDonald* answers that the public employee's right of access to the courts to enforce an important federal statutory or constitutional right cannot be barred by a collective bargaining agreement's grievance and arbitration procedure.

It is true that the United States Supreme Court has held that an action by an employee in the private sector seeking damages for an alleged "wrongful discharge" was a "minor dispute" which he was compelled under the Railroad Labor Act to arbitrate before the National Railroad Adjustment Board. *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320 (1972). This decision has no application to a suit by a public employee for damages for an allegedly unconstitutional deprivation of his or her property interest in the employee's job. A claim based upon a constitutionally protected interest cannot,

as a matter of law, be deemed a "minor dispute."[6]

Hanson voluntarily dismissed his claim against the union for its breach of its duty to fairly represent him. Hanson is not thereby foreclosed from showing in this action that the union breached its duty to pursue his grievance. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554 (1976) (employees could maintain action against employer for breach of collective bargaining agreement even though accompanying action against union remained to be tried). It is, however, unnecessary for us to decide whether, as a condition of maintaining this action, Hanson must show that the union violated its duty to him of fair representation.[7] That question has not been argued or briefed. *But see,* M. Finkin, *supra,* at 257–58.

---

[6]It is possible, however, that the Court will require exhaustion of a collective bargaining agreement's grievance procedure where the employee does not claim that he or she was discharged for the exercise or attempted exercise of a constitutional right or a substantive right conferred by federal or state law. *But see McDonald,* 466 U.S. at 292 n. 11 (a rule of preclusion might have a detrimental effect on the arbitral process because employee might bypass arbitration) and *id.* n. 12 (preclusion of a judicial action would gravely undermine the effectiveness of sec. 1983). It is doubtful, in that event, that the Court will permit the union and the employer to bar the employee's access to the grievance machinery. *See* M. Finkin, *supra,* at 256–63.

[7] *See Mahnke v. WERC,* 66 Wis. 2d 524, 225 N.W.2d 617 (1975) (employee in private sector could not maintain unfair labor practice against employer without establishing that the union failed in its duty of fair representation to him).